AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apartment 56 Located at 5 Crestmont Drive,<br>Charleston, West Virginia | )<br>)<br>) Case No. 2:21-mj-00003<br>)<br>) |



SEALED
FILED
JAN 11 2020
RORY L. PERRY II, CLERK
U.S. District Court
Southern District of West Virginia

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Apartment 56 located at 5 Crestmont Drive, Charleston, West Virginia

located in the _____Southern_____ District of _____West Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment A

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C 841 & 846 | Distribution of controlled substances and conspiracy to distribute controlled substances |

The application is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

A.D. Aldridge, TFO DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/09/2021

*Judge's signature*

City and state: Charleston, West Virginia       Dwane L. Tinsley, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, A.D. Aldridge being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for a warrant to search Maylik WATSON's stash house located at 5 Crestmont Drive Apt.56 Charleston, WV 25311.

2. I have been a Task Force Officer with DEA since July 2020. I have received DEA Basic Narcotics Officer Training at the Kanawha County Sheriff's Office Training Center located in [Charleston, WV]. I am currently assigned to DEA Charleston Office. Prior to my current assignment, I was assigned to the Metro Drug Enforcement Network Team (Charleston, WV) for approximately 3 years. Prior to this assignment I was assigned to the Charleston Police Department's Patrol Division, as a Patrol Officer. As a Patrol Officer with the Charleston Police Department I had the opportunity to respond to, and investigate many crimes including narcotics related crimes. As a Detectives assigned to the Metro Drug Unit, I began to specialize in narcotics related investigation. I have participated in approximately 300 separate narcotics investigation led by myself and assisted others. I have participated in multiple large-scale Drug Trafficking Organization investigations involving multiple jurisdictions and states. I have had the opportunity to assist other Federal Agencies in cases involving Title III communication interceptions. I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, and laundering proceeds, among other subjects related to drug trafficking. I have been to a plethora of narcotics related trainings including the HIS/DHS TFO course.

Agents and Detectives that I work with on a day-to-day basis have had similar, and more experiences with large scale investigations.

3. I have obtained the facts set forth in this Affidavit through my personal participation in the investigation, from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation, and from other sources of information as referenced herein. This affidavit is intended to show merely that there is enough probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

4. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Maylik WATSON and others regarding possible violations of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 9234(c). The investigation thus far has determined WATSON is the head of the Maylik WATSON Drug Trafficking Organization (DTO).

5. Investigators ran a criminal history report on WATSON, which provided the following information.

| | | | |
|---|---|---|---|
| a. | 9/10/2015 | PWITD C/S | Dismissed |
| b. | 10/22/2015 | Fleeing in vehicle | Convicted |
| c. | 11/30/2016 | 1st Degree Robbery | Dismissed |
| d. | 10/29/2019 | PWITD Heroin | Unknown |
| e. | 12/30/2019 | Strangulation | Unknown |

6. Throughout the last half of 2020 investigators have investigated the Maylik WATSON DTO. Investigators have conducted controlled purchases on WATSON, Jermaine WILLIAMS, and other members of the DTO, of large quantities of methamphetamine using

2

confidential informants. Officers have also executed search warrants on various members of the DTO, which resulted in the seizures of large quantities of methamphetamine, U.S. currency, and firearms.

7. On July 6, 2020, investigators conducted a controlled buy of suspected methamphetamine from WATSON using a Confidential Informant, herein after referred to as CI. The deal was arranged to take place at a pre-determined location in Kanawha County, WV. The deal was arranged for approximately one-half pound of suspected methamphetamine. The CI was provided with $5600 in pre-recorded buy money. The transaction was completed between WATSON and the CI. During the controlled buy, WATSON also fronted one-half pound of additional suspected methamphetamine to the CI. This transaction was captured on audio/video recording. The CI turned over the suspected methamphetamine to officers and laboratory testing confirmed it to be methamphetamine, a Schedule II controlled substance, weighing approximately 403.9g.

8. On July 10, 2020, investigators utilized the same CI to conduct a controlled re-payment for the fronted one-half pound of methamphetamine. Investigators provided the CI with $4200 in pre-recorded buy money. This transaction was completed between the CI and WATSON and was captured on audio/video recording.

9. After this transaction investigators followed WATSON to a set of apartments located at 715 Randolph Street (Agsten Manor Apartments), Charleston, West Virginia, where investigators later determined that WATSON's father resides. This location is believed to be a "stash house" where WATSON keeps large amounts of U.S. currency.

10. On September 22, 2020, investigators utilized the aforementioned CI to conduct a controlled purchase of suspected methamphetamine from WATSON in Kanawha County, West

3

Virginia. Investigators provided the CI with $5000 in pre-recorded buy money to purchase one-half pound of suspected methamphetamine. The transaction was completed between Watson and the CI in the area of Patrick Street in Charleston, West Virginia. Investigators were able to utilize a fixed camera placed near the area of WATSON 's residence, which was identified as 5 Crestmont Drive, Apt.53, Charleston, West Virginia 25311 during this transaction. Prior to the transaction taking place, investigators observed WATSON enter his silver Jeep Grand Cherokee bearing WV registration O6W422. WATSON left the area of his residence and traveled to Patrick Street where he met with the CI. This meeting was recorded with audio, but the video portion had a technical malfunction. The CI turned over the suspected methamphetamine to officers and laboratory testing confirmed it to be methamphetamine, a Schedule II controlled substance, weighing approximately 251.4g.

11. On September 11, 2020, investigators installed a GPS tracking device on WATSON's Jeep bearing WV registration O6W422. This installation was authorized via a Tracking Warrant issued through the United States District Court of the Southern District of West Virginia.

12. During the monitoring of the GPS device and the fixed camera that was installed, investigators determined that 5 Crestmont Drive, Charleston, West Virginia 25311 was WATON's primary residence, which investigators believed to be his operation.

13. In November 2020, investigators spoke with management and maintenance at the Sanctuary Apartments where 5 Crestmont Drive is located. These individuals confirmed that WATSON resides at 5 Crestmont Drive, Apt. 53, Charleston, West Virginia. Additionally, these individuals stated that WATSON's brother (determined to be Donte WILLIAMS) resides at 5

Crestmont, Drive Apt. 56, Charleston, West Virginia. They advised that WATSON told them WILLIAMS was his brother or "like his brother."

14. On November 11, 2020, investigators began intercepting phone calls of members of the DTO including Maylik WATSON, via a T-III interception court order signed by United States District Court Judge Berger in the Southern District of West Virginia.

15. While monitoring the T-III interception, investigators were able to monitor numerous calls between WATSON and his redistributors. During most of these monitored calls when WATSON had arranged a distribution of methamphetamine, investigators were able to monitor WATSON leave his residence located at 5 Crestmont Drive Apt. 53, Charleston, West Virginia 25311, and go to the meet location for the distribution. WATSON primarily drove his 2017 Jeep Grand Cherokee bearing West Virginia registration O6W422, which is registered to Sydni WATSON (M. WATON's sister) or a white Audi A6 bearing SC registration QYC745, which is improperly registered to Antoine WILMORE (M. WATSON's brother).

16. On December 14, 2020, investigators renewed the T-III application, which was signed in the Southern District of West Virginia District Court by the Honorable Judge Irene Berger.

17. From November through January, investigators continued to conduct surveillance on WATSON, who continued to operate out of the 5 Crestmont Drive, Apt. 53, Charleston, West Virginia 25311. WATSON also utilized 5 Crestmont Drive, Apartment 56, Charleston, West Virginia belonging to Donte WILLIAMS.

18. On November 12, 2020, at approximately 3:53 pm, WATSON called DONTE WILLIAMS. The following was discussed:

WILLIAMS: Yo.

WATSON: Hey, bag me up a QP of my shit, out that lil' girl baggie.

WILLIAMS: Alright.

5

WATSON:   Yeah.

Based on agents' training and experience, and the facts of the investigation thus far, agents believe this is WATSON asking WILLIAMS to get him a quarter pound (QP) of methamphetamine ("my shit") from his stashed supply ("out that lil' girl baggie") at WILLIAMS' apartment.

19.   On December 27, 2020, officers with the Charleston Police Department responded to 5 Crestmont Drive, Apartment 56, Charleston, West Virginia, in response to a medical issue. Prior to officers arriving, agents conducting surveillance witnessed Donte WILLIAMS remove a large black bag from his residence and place it in WATSON's Jeep Cherokee. Later that evening, investigators intercepted a call between WATSON and Omni WATSON, wherein WATSON told Omni WATSON that "Don" had hurried and put everything in the back of his Jeep. Based on my training and experience, I believe this bag contained controlled substances and/or other evidence of drug trafficking that WATSON was storing at WILLIAMS' residence.

20.   On December 16, 2020, at approximately 12:16 pm, WATSON received a call on from Myreo DIXON on telephone number (586) 365-8312. Investigators have identified DIXON as a source of supply for WATSON. During the call, WATSON and DIXON discuss DIXON's last delivery to WATSON through a female courier. WATSON paid the unidentified female courier money for the delivery and WATSON, DIXON, and the unidentified female discuss the money, whether it was right when provided by WATSON, and the female's actions with the money. WATSON tells DIXON that he does not want to deal with the female and DIXON informs WATSON that he will begin doing the deliveries himself. Toward the end of the call, WATSON tells DIXON that his distributions will pick up in January.

21. Based on this call, investigators reviewed a fixed camera that is facing in the direction of WATSON's apartment complex for the night of December 15, 2020, leading into the early morning hours of December 16, 2020. Investigators observed a black KIA arrive at this location and the occupant stayed inside of the vehicle. WATSON returned to his apartment complex, exited his vehicle, and proceeded to wait in front of the apartments. An unknown female exited the black KIA and retrieved a large bag out of the back-hatch area of the vehicle. The unknown female approached WATSON and the two of them walked in the direction the apartment, out of the view of the camera. The KIA was seen leaving a short time later, driven by the unknown female. Based on the intercepted call and the observations from the camera, investigators believe this was the delivery of methamphetamine that DIXON and WATSON were discussing on December 16, 2020.

22. On January 8, 2021, investigators intercepted a call between WATSON and DIXON, wherein DIXON told WATSON that he was waiting for the other half to arrive and WATSON informed DIXON that he had "63" ready. Based on my experience and the investigation thus far, I believe that Watson was referring to $63,000 to pay for sixteen pounds of methamphetamine.

23. On January 9, 2021, investigators intercepted a call between DIXON and WATSON. DIXON asked WATSON if "he had it already" and WATSON responded "she is in the crib. Tell her I'm about to be back up there." Based on my investigation this far, I believe WATSON was telling DIXON that the female driver was in his apartment waiting for him and that he would be back to the apartment momentarily. Investigators conducting surveillance at 5 Crestmont Drive, Charleston, West Virginia, observed the same black KIA sitting in the parking lot with a female driver and the lights that was observed on December 16, 2021. Investigators

conducting surveillance at 5 Crestmont Drive, Charleston, West Virginia, observed the same black KIA sitting in the parking lot with a female driver and the lights on from December 16, 2021. Based on my experience and knowledge of this investigation thus far, I believe that DIXON has sent the same female courier with sixteen pounds of methamphetamine for WATSON.

24. Investigators conducting surveillance also monitored WATSON going to his father's residence at 715 Randolph Street, Apartment 114, Charleston, West Virginia, which is where he was at the time of the call with DIXON. Based on WATSON's call with DIXON, investigators believe WATSON travelled to his father's apartment to pick-up the $63,000 for the transaction. After WATSON left 715 Randolph Street, Apartment 114, Charleston, West Virginia, and travelled back to 5 Crestmont Drive, Charleston, West Virginia. Approximately 15 minutes later, investigators saw the unknown female place a large bag into the rear-hatch area of her vehicle. Officers conducted a traffic stop of the vehicle and found a large amount of United States currency in a box wrapped like a Christmas present.

25. Based on the investigation, agents know that WATSON utilizes both his apartment at 5 Crestmont Drive, Apartment 53 and WILLIAMS' apartment at 5 Crestmont Drive, Apartment 56, to store his controlled substances. Therefore, based on the above, I believe there is probable cause to believe that controlled substances and/or other evidence of drug trafficking are contained within 5 Crestmont Drive, Apartment 56, Charleston, West Virginia.

26. During this investigation, officers have seized numerous firearms from members of the WATSON DTO to include a fully automatic firearm. WATSON, WILLIAMS, and others have posted numerous pictures on social media sites with firearms and videos of themselves firing firearms. Based on investigators' knowledge that WATSON, WILLIAMS, and others are

8

in possession of firearms, I seek permission to execute this warrant after 10:00 pm for officer safety. Additionally, because of the amount of drugs investigators believe WATSON to possess and the need to prevent further distribution of the suspected methamphetamine, I seek permission to execute the warrant in the night-time hours.

Respectfully submitted,

_A.D. Aldridge_
A.D.Aldridge
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to me on January 9th, 2021.

DWANE L. TINSLEY
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A

1. Controlled substances, including, but not necessarily limited to cocaine base and cocaine.

2. Financial and business records, including, but not limited to, books, records, ledgers, journals, receipts, notes, memoranda, address books, and telephone books.

3. Titles, books, records, receipts, bank statements and records, money drafts, letter of credit, money order and cashier's checks, receipts, passbooks, bank deposit tickets, safe deposit box keys, and memoranda and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment, and/or expenditure of money.

4. United States currency, precious metals, jewelry, safes, and financial instruments, including, but not limited to, stocks and bonds.

5. Drug ledgers and/or records relating to drug trafficking and drug debts.

6. Paraphernalia for packaging, weighing, and distribution of controlled substances, including, but not limited to, scales, storage containers, and plastic bags.

7. Firearms and security devices.

8. Photographs which could include identifying information regarding individuals involved in the sale of controlled substances and the subject money laundering.